Davis, J.
The material averments in appellee’s complaint are that appellant, on the-day of-, 1892, owned and operated a stone saw mill, with engines, derricks, traveler on a tramway three hundred feet- long, sixty feet wide and thirty feet high, and other machinery; that the traveler was used to raise and move blocks of stone over and around the yard connected with said mill.
“The officers, agents, foreman and superintendent, prior to and at the date of the grievances hereinafter complained of, had carelessly and negligently piled, and caused to be piled, huge stones, blocks of stone of irregular size, shape, structure and uneven surface most all over the yard or space between the different bents of said tramway; that defendant carelessly allowed these stones of irregular surface of different sizes and different *28 dimensions, different lengths and thicknesses, to be carelessly laid upon one another, and to be piled and wedged in between and on one another, and had carelessly and negligently permitted great piles of stone to accumulate in said yard. Said defendant had piled, and caused to be piled, stones as above set out in said yard or space between the different bents of said tramway, on made ground, which had, after said careless and negligent piling and placing of said stone, and prior to the date of the grievances herein set forth, given away and crumbled and become lower in some places than others, and had disarranged the stone so negligently piled as aforesaid, and thereby caused said place to become dangerous and unsafe to defendant’s employes.”
That on said day James F. Hobbs was at work for appellant on said yard beneath the traveler that ran over said tramway, and while in the line of this duty, and without any knowledge of the dangerous condition of said yard, in the act of hooking a set of dogs onto a stone to be raised or moved by said traveler, and without any notice, knowledge or fault on his part, one of said stones, so carelessly and negligently piled and placed, slid upon or turned over on said Hobbs and so injured him as to cause his death; that he left a widow surviving him, and that said appellee was the duly appointed, qualified and acting administrator of his estate.
A demurrer to the complaint was overruled. Counsel for appellant contends that the complaint is insufficient because there is no charge that the widow has been damaged in any manner. The substance of counsel’s argument is that the complaint should charge that she was dependent on her husband for support, and that the suit was prosecuted in her interest and for her benefit.
The section of the statute on which the action is based reads as follows: “When the death of one is caused by *29 the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages can not exceed ten thousand dollars, and must inure to the ex-elusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased.” Section 284, R. S. 1881 (section 285, R. S. 1894).
If the complaint is sufficient in other respects, all that is necessary on this question, in our opinion, is to aver that there are such persons to whom, under the statute, the damages recovered may inure. Stewart, Admr., v. Terre Haute, etc., R. R. Co., 103 Ind. 44.
A special verdict was returned on which judgment was rendered in favor of appellee for seventeen hundred and fifty dollars.
One of the errors assigned is that the court erred in sustaining appellee’s motion for judgment in his favor ■on the verdict.
The jury in their special verdict found that the appellant left the large stone sitting upon two small and irregular stones without any props or stays of any kind to keep the same from falling, and that the dirt beneath it was liable to give way, and allow the same to turn over suddenly upon its side, and that the stone had remained in that condition for some two or three months before the 23d of December, 1892; that it could have been discovered readily; that said stone was resting on two small stones on its edge, and was liable to fall over; that Hobbs had worked about the yard as hooker for several months prior to his death; that he had good eyes and hearing, was strong in physical health, and *30 that he was familiar with lifting and taking out stone from said yard; that he had no knowledge that the stone' was sitting on two small irregular stones, and that he had no knowledge that the same was liable to fall or turn over upon him; that the stone apparently sat up right, and that there was nothing in its appearance or about it to' indicate that it was about to turn over, and that the place around and about said stone was then and there dangerous and unsafe, in which condition it had remained for two or three months, and that said stone "so placed upon two small irregular stones fell over and against the body and limbs of said Hobbs,” etc.
The particular act of negligence attempted to be alleged in the complaint as the proximate cause of the injury is not clear. It is not a model pleading, but the-charge as we understand it is that appellant carelessly and negligently piled, and caused to be piled, large stones— blocks of stone—of irregular size, shape, structure, and uneven surface, upon one another on made ground which had crumbled, given away, and become lower in some places than others, and had disarranged the stone so negligently piled as aforesaid, and thereby caused said place to become dangerous to appellant’s employes. The giving away of the made ground under the stone so irregularly piled upon one another seems to be the act charged which rendered the place dangerous. It is alleged that one of these stones, so negligently and carelessly piled and placed upon one another on the ground which crumbled and gave away, slid upon and turned over on him without fault on his part. It will be observed that the complaint does not disclose that said decedent was ever in the service of the appellant prior to the day on which he was injured, and it is further alleged that he had no knowledge of the dangerous condition of the place.
*31 The jury do not find that huge blocks of stone were carelessly and negligently piled upon one another on made ground which had crumbled, given away and become lower in some places than others, thus disarranging the stone, and thereby causing the yard to become dangerous, and that one of said stones slid upon, and turned over on, said Hobbs. The jury find that a large stone was left sitting without props or stays, upon two small irregular stones, and that the dirt beneath it was liable to give away and allow the stone to turn over suddenly upon its side, but there is no finding that the dirt beneath the stone gave away. The finding is that the stone fell, but there is nothing to indicate that the condition of the ground had anything to do with the fall. The cause of the fall is not found, but the inference is that the stone fell because of the -fact that it was sitting on edge without props or stays.
On the theory that the gist of the action is the breach of the duty on the part of the master to provide said Hobbs with a reasonably safe place to work, and that the particular act which rendered the place dangerous is not material, the verdict may be sufficient to sustain the judgment under the issue tendered by the complaint, but in view of our ultimate conclusion the determination of this question is not of vital importance.
It is earnestly insisted that the verdict of the jury is not sustained by the evidence. Giving the evidence the most favorable consideration in behalf of the appellee the facts are that appellant was engaged in the business described in the complaint; that said decedent commenced work for appellant when the mill plant was being erected, and continued for four or five months thereafter, prior to the accident, to work for the company as a hooker in and about the yard where he was injured. The traveler was used to lift the stone off the cars and *32 set them in the yard, and to lift the stone out of the yard ontothecar. The traveler contained two “dogs” or hooks, and it was the duty of the hookers to fasten or attach the hooks to the stone in order to unload it from, or to load it on,- a car.
On the day the accident occurred there were three stones in close proximity to each other. One of the stones, about nine feet long, five feet wide and fifteen inches thick, was sitting on its edge, on two smaller stones about one foot thick, without any props or stays of any kind to keep the stone from falling over. The stone in question had been in this position for two or three months. The decedent had frequently, before the day he was injured, been around this locality, and on this day he had been working in this part of the yard during the afternoon, and at this particular place about ten minutes. He was a strong, robust man, thirty-two years of age', with good eyesight and good hearing, and in the full possession of all his faculties. The position and appearance of the stone were clear and open to the observation of every one. There is nothing in the complaint, verdict, or evidence indicating that there was any latent or hidden defect that contributed to the injury. The decedent and a fellow-workman, about three o’clock in the afternoon of December 23, 1892, were undertaking to remove one of the other stones referred to, and the decedent started to put the “dogs” attached to the ends of the chain of the traveler into the holes in one end of the stone which they were intending to move, when the stone above described fell against and on the decedent, causing the injuries which resulted in his death.
Conceding that the alleged negligence on the part of the appellant has been established, the question remains whether said employe should be held, under the facts *33 and circumstances of this case, to have assumed the risks incident to the danger growing but of such negligence.
It is apparent, from the evidence, that said Hobbs had an equal opportunity with appellant to know of the unsafe and dangerous condition of the yard, arising out of the position of said stone, and the conclusion is irresistible that by casual observation he could have known of the danger, prior to his injury. Evansville, etc., R. R. Co. v. Duel, 134 Ind. 156 (161); Blondin v. Oolitic Quarry Co., 11 Ind. App. 395; Pittsburgh, etc., R. W. Co. v. Woodward, 9 Ind. App. 169; Ames, Admr., v. Lake Shore, etc., R. W. Co., 135 Ind. 363; Big Creek Stone Co. v. Wolf, 138 Ind. 496; Day v. Cleveland, etc., R. R. Co., 137 Ind. 206.
In Day v. Cleveland, etc., R. R. Co., supra, Judge McCabe says: “In a cas.e where the servant is one of mature age and experience, as in this case, the law never imposes the duty on the master of becoming eyes and ■ears for his servant, where there is nothing to prevent the servant from using his own eyes and ears to avoid danger. * * * The law requires that men shall use the senses with which nature has endowed them, and when without excuse one fails to do so, he alone must suffer the consequences,'and he is not excused where he fails to discover the danger if he made no attempt to employ the faculties nature had given him. * * * Therefore, on the appellant’s own testimony, and all the other evidence tending to support it, and giving it a construction the most favorable to the appellant, he can not recover.”
It is true that was not a case in which the master had furnished an unsafe place to work. In that case the •employe, a carpenter, was directed to assist the painters to push a car on the repair tracks in the shop. So *34 much, however, of the reasoning of the court as we have quoted is applicable to the facts in this case.
In Pittsburgh, etc., R. W. Co. v. Woodward, supra, Judge Gavin, in discussing the general rule, says: “Knowledge of the danger upon his part, or the existence of such facts as that by the exercise of reasonable diligence he might have known thereof, ordinarily constitutes an assumption of the risk. * * * Where the danger is open and obvious to either master or servant, it might doubtless be properly said that master and servant stand upon an equality. But even then the servant’s assumption of the risk depends not upon the equality of his opportunities * * but upon tlie fact that by the exercise of reasonable care he ought to have known of the danger, and is therefore held to have known it.”
The language of the court in Gleason v. New York, etc., R. Co. (Mass.), 34 N. E. Rep. 79, is applicable in this case: “The plaintiff’s familiarity with the general condition of the premises can not be doubted, and the condition at this particular place, where he had been in the habit of working day after day, was open to view, and obvious. Under this state of things, no duty rested upon the defendant to alter the timbering or planking, and the plaintiff must be held to have taken the risk.”
The rule that the master is bound to use ordinary care in furnishing the servant a reasonably safe place to work, is well settled, but where the danger is equally open and obvious to both the master and servant, and there is no-promise to repair or remedy the .defect, there is ordinarily no liability on the part of the master.
The theory of counsel for appellee, as indicated by the complaint and proceedings at the trial, appear to have been that the unsafe and dangerous condition of the-stone was open and obvious; that this state of affairs had existed for several months prior to the accident, and that *35 tlie danger could have been readily seen and discovered by appellant in the exercise of ordinary care.
It was not the duty of the decedent to make an examination or inspection to discover any latent or concealed defects or imperfections. He was only required to exercise ordinary care to avoid open and obvious dangers.
If there was any evidence, either direct or fairly inferential, tending to establish the fact that the proximate cause of the injury was a latent or concealed defect or imperfection which might on reasonable inspection have been discovered by appellant, the action might be sustained. All we decide now is that the cause of action alleged in the complaint has not been sustained by the evidence in the record.
In the case of Blondin v. Oolite Quarry Co., supra, Blondin was employed by the company for the specific purpose of dressing stone and preparing the same for shipment after it had been quarried and placed in the stone yard “on a solid and steady surface secure and safe to work upon and about." Blondin had nothing to do with placing the stone in the yard. It was no part of his duty to bring or assist in bringing the stone to the yard or to take or assist in taking it away. In that case the company was in duty bound to place and keep the stone upon a safe and secure foundation. The stone which fell in that case had not been reached by the dressers. It was not the duty of Blondin to examine the stones about him to ascertain if they were all securely placed and free from danger of falling over while he was engaged in dressing other stone.
In this case, on the contrary, the specific work in which appellee’s decedent was and had been engaged for four or five months was loading and unloading the stone, placing it in and taking it from the yard. It.was apart of his duty, when stone was unloaded from a car into the *36 yard, to see that it was securely placed. Whether he had assisted in unloading and placing this particular stone is not shown. It appears that the stone had been in the yard two or three months prior to the injury. Hobbs had been one of the hookers in the yard for four or five months. The stone had been in one and the same position all the time. It had been placed in that position by the use of the traveler, evidently when the hooks were attached to it at the time it was unloaded into the yard. The inference is legitimate, if not conclusive, that either said Hobbs or his associates placed it in the position it occupied.
Filed Oct. 31, 1894.
In any event, as we read and understand the evidence in the record, it proves without contradiction beyond controversy that Plobbs had an equal, if not a better, opportunity of knowing the condition and situation of the stone than the appellant.
In the language of Judge Coffey, in Big Creek Stone Co. v. Wolf, supra: “When the danger is equally known to both the master and servant there is no liability on the part of the master.”
If he did not in fact have such knowledge, yet, in the language of Judge Hackney, in Ames, Admr., v. Lake Shore, etc., R. W. Co., supra: “If, from his service, he had opportunities, equal to those of the company, to know of the absence of the block, he must be held to have assumed the risk incident to the use of the switch without such block.”
Judgment reversed, with instructions to grant appellant’s motion for a new trial, with leave to amend complaint if desired, all at costs of appellee.